140 P.3d 1014

James SINGLETON, Appellant–Appellant

v.

LIQUOR COMMISSION, COUNTY OF HAWAI'I, Appellee–Appellee

and

Big Island Restaurant Group, Inc., dba Paparazzi, Appellee.

No. 26898.

Supreme Court of Hawai'i.

Aug. 17, 2006.

**236**

Joyce M. Brown, on the briefs, for appellant-appellant.

1.  Hawai'i Revised Statutes (HRS) § 281–59, entitled "Hearing, rehearing," provides in relevant part:

    (a) ... [T]he liquor commission shall consider the application and any protests and objections to the granting thereof.... Within fifteen days after the hearing, or within thirty days thereafter if in its discretion the commission extends the fifteen days to thirty days, and gives public notice of same, the commission shall give its decision granting or refusing the application; *provided that if a majority of the:*
    (1) Registered voters for the area within five hundred feet of the nearest point of the premises for which the license is asked; *or*
    (2) *Owners and lessees of record of real estate and owners of record of shares in a cooperative apartment within five hundred feet* of the nearest point of the premises for which the license is asked;
    have duly filed or caused to be filed their protests against the granting of the license, or if there appears any other disqualification under this chapter, *the application shall be refused. Otherwise, the commission may in its discretion grant or refuse the same.*
    For purposes of defining "a majority of the owners and lessees of record of real estate and owners of record of shares in a cooperative apartment", *each property counts only once. A protest submitted by the majority of the co-owners or the majority of the co-lessees of a property shall constitute a protest by all the owners or lessees of record of that property.* Owners or lessees who own more than one property may count each property.
    (b) ... The liquor commission shall rule on proposed corrections, additions, and subtractions and give reasons for the ruling.
    (c) The commission may also, with like discretion:
        . . . .

Gerald Takase, Assistant Corporation Counsel, County of Hawai'i, on the briefs, for appellee-appellee Liquor Commission, County of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that (1) the State of Hawai'i (State or the State) and the County of Hawai'i (County or the County) governments fall within the definition of "owner of record" in Hawai'i Revised Statutes (HRS) § 281–59 (Supp.2005) [1] as property owners of real estate, (2) State and County entities are owners in regard to the notice and protest requirements set forth in HRS §§ 281–57 (Supp.2005) [2] and 281–59, (3) Appellee Big

(2) Of its own motion, or on the suggestion of any member, or of the investigator take notice of any matter or thing *which in the opinion of a majority of its members* would be a sufficient objection to the granting of a license; but in such case if the objection is one to which the applicant should be given a reasonable time to answer, a continuance may be granted in the discretion of the commission;
provided that in any case where any person affected by such decision petitions the commission for a rehearing of the application and on oath *alleges facts and grounds for consideration which were not formerly presented or considered,* or any other matter of fact which in the judgment of the commission seems sufficient to warrant a rehearing, *such rehearing may be granted by the commission in its discretion* upon the publication of notice of rehearing at least seven days before the date of the rehearing. When a rehearing is allowed notice shall be given to the applicant and to the applicant's opponents, by publication or otherwise as the commission shall direct.
    (Emphases added.)

2.  HRS § 281–57(b) states in relevant part:

    (b) If no preliminary hearing is had or if the application is not denied upon a preliminary hearing, the commission shall fix a day for the public hearing of the application ... and shall give public notice of the hearing at least once in each of two consecutive weeks, in the county, *the date of the hearing to be not less than forty-five days after the first notice. The notice shall require that all protests or objections against the issuance of the license applied for shall be filed with the administrator of the commission at or before the time of hearing.* ...
    (Emphasis added.)

Island Restaurant Group, Inc., doing business as Paparazzi (Applicant) complied with the notice requirements of HRS § 281–57 related to its application for a liquor license, (4) the designation of State and County governments as "owner[s] of record" did not constitute "rule-making" under HRS §§ 91–2 (1993), 91–3 (Supp.2005), and 91–4(a) (1993), (5) the erroneous statement by Janice Pakele, the Director of the Liquor Commission, County of Hawai'i (the Director), that the less stringent protest requirements found in HRS § 281–59 were applicable to the instant case, was corrected and was not prejudicial, (6) the decision of Appellee–Appellee Liquor Commission of the County of Hawai'i (Appellee) granting Applicant's request for a liquor license was not clearly erroneous or characterized by an abuse of discretion, and was supported by substantial evidence in the record, (7) even if added to other protests by adjacent owners or lessees of real estate, the two protest votes not counted by Appellee would not have resulted in a majority vote, requiring an automatic refusal of the application under HRS § 281–59, and (8) Appellant–Appellant James Singleton (Appellant) has failed to establish that he was deprived of property without due process of law by Ap-

pellee's grant of Applicant's application for a liquor license. Accordingly, the September 10, 2004 final judgment of the circuit court of the third circuit (the court) [3] affirming Appellee's October 2, 2003 oral decision granting a liquor license to Applicant is affirmed. We also reject Appellant's challenges to Appellee's November 19, 2003 Findings of Fact, Conclusions of Law and Decision and Order denying the request for rehearing by Appellant under HRS §§ 281–57 and 281–59.

I.

On March 3, 2003, Applicant applied for a liquor license at the old "World Square Theater" located in the Kona Marketplace Shopping Center on Ali'i Drive on the island of Hawai'i. A preliminary hearing took place on May 1, 2003, at the Royal Kona Resort, at which time the application was approved for a July 3, 2003 public hearing in Hilo.

On May 16, 2003, on behalf of Applicant, Miho Yoneyama (Ms. Yoneyama) of Waikoloa Planned Management, sent out notices by mail regarding the July 3 hearing to property owners situated within a distance of 500 feet of the property, pursuant to HRS § 281–57(c)(1).[4] The mailing provided general infor-

---

3. The Honorable Ronald Ibarra presided.

4. HRS § 281–57(c) and (d) in relevant part state:
   (c) Immediately upon the commission's fixing a day for the public hearing of the application, *the applicant shall mail a notice setting forth the time and place of the hearing on the application to each of the following:*
   (1) *Not less than two-thirds of the owners and lessees of record of real estate and owners of record of shares in a cooperative apartment or to those individuals on the list of owners as provided by the managing agent or governing body of the shareholders association situated within a distance of five hundred feet from the nearest point of the premises for which the license is asked to the nearest point of such real estate or cooperative apartment;* provided that in meeting this requirement, the applicant *shall mail a notice to not less than three-fourths of the owners and lessees of record of real estate and owners of record of shares in a cooperative apartment situated within a distance of one hundred feet from the nearest point of the premises for which the license is asked.* Notice by mail may be addressed to the last known address of the person concerned or to the address as shown in the last tax return filed by the person or the person's agent or representative;

   . . . .
   (3) For each *condominium project and cooperative apartment within the five hundred-foot area,* one notice of the hearing shall be sent by mail addressed "To the Residents, Care of the Manager", followed by the name and address of the condominium or cooperative apartment involved.
   The notices required under this subsection *shall be mailed at least forty-five days prior to the date set for the hearing.* No promotional information shall be allowed on, or accompany the notice. *Before the hearing, and within seven days of having mailed the notices, the applicant shall file with the commission an affidavit that the notices have been mailed in compliance with this subsection.* In addition to the affidavit (which shall be made available within the same seven-day period with proof of having mailed the notices), *the applicant shall include both a master list of one hundred per cent of addressees and addresses required by paragraphs (1), (2), and (3), and another mailing list consisting of the portion of addressees and their respective addresses who were mailed the notice purposely needed to meet the requirements of paragraphs (1), (2), and (3).* The affidavit, master list, and mailing list shall be made available within seven days (of the mailing of the notice by the

mation about Applicant, including its intended clientele, the music to be played, and its intent to serve alcohol. The mailing also listed steps that Applicant would take to reduce noise emitted from the property.

Applicant sent out notices to 75 out of 78 property owners eligible to protest, situated within a distance of 100 feet, and notices to 93 out of the 101 property owners eligible to protest, situated within a distance of 500 feet of the subject premises.

On June 20, 2003, Ms. Sandy Apostolidis (Ms. Apostolidis), describing herself as the "Treasurer AOAO Kona Plaza," wrote to Appellee indicating that she was a member of the Board of Directors of The Kona Plaza, asking that "the public hearing for protests" be moved to Kona.

On July 3, 2003, the public hearing on the application was held at Appellee's conference room in Hilo. Appellee determined that there were 117 parcels involved. HRS § 281–59(a), see supra note 1, requires rejection of the application if a majority of parcel owners file a protest with Appellee.

As of July 3, 2003, there were 10 protests filed by owners and lessees of record of real estate and owners of record of shares in a cooperative apartment situated within a distance of 500 feet. This was less than the majority of parcel owners needed to reject the application. At Appellee's July 3 meeting, it appears that the Director incorrectly announced that the 40% protest requirement in HRS § 281–39.5 (Supp.2005) [5] would be applied inasmuch as a private day care center at Mokuaikaua Church was situated within 500 feet of the proposed site.

At the July 3, 2003 hearing, Ms. Apostolidis testified. She is the owner of a competing night club, Cassandra's. She described herself at the July 3, 2003 meeting as "[a] Director of the Kona Marketplace." She also said that she was "speaking on, I'm a Director of the Association, and so I came out to speak as, on [sic] the Directors."

Ms. Apostolidis testified that a Mr. Michael Medeiros (Mr. Medeiros), Applicant's sole shareholder, officer, and director, failed to state in the mailing that he owned Michaelangelo's Restaurant and Dance Club (Michaelangelo's) located on the same road as Applicant. Appellant maintains that the omission of this information was misleading. Ms. Apostolidis stated that she did not receive the notice required under HRS § 281–57(c). See supra note 4.

Appellee continued the meeting to August 2, 2003, to allow a review of the proposed site. On August 2, 2003, the public hearing was reconvened in Kona.[6] However, an inspection of the proposed site's interior did not take place because Mr. Medeiros lacked keys to the building. The Director decided to forego an internal inspection and continued with an external inspection of the site.

applicant) by the commission for public review upon request. ... The commission shall cancel the hearing if not receiving the affidavit prior to the hearing or if discovering that the affidavit is false.

(d) For purposes of this section, *notice to one co-owner and one co-lessee of real estate shall be sufficient notice to all co-owners and all co-lessees of that real estate;* except that one notice shall be sent to each individual unit of a cooperative apartment as provided in this section.

(Emphases added.)

5. HRS § 281–39.5, entitled "Liquor license prohibited; where," states in part:

(a) The liquor commission ... may deny or restrict the issuance of a liquor license for on-site sale and consumption by the drink to any applicant whose establishment is or would be located *within five hundred feet of a public or private elementary, intermediate, or high school,*

*or public playground utilized extensively by minors* ... provided that the liquor commission or agency ... shall deny the issuance of a liquor license if *forty per cent* of the:
....

(2) Owners and lessees of record of real estate ... in a cooperative apartment within five hundred feet of the nearest point of the premises for which the license is asked;

have duly filed or caused to be filed their protests against granting the license. ... *[P]ublic or private day care centers located in or adjacent to commercial areas shall not be deemed schools or public playgrounds for purposes of this section.* The provisions of this section shall not apply to establishments located within areas designated by the appropriate counties for resort purposes, or to hotel liquor license applicants.

(Emphases added.)

6. The "on-site visitation" occurred at 5:05 P.M. on August 2, 2003.

After the site inspection the hearing reconvened.[7] The Director corrected her previous statement regarding the amount of protests required to trigger a refusal of a liquor application. As stated *supra,* the Director had indicated that the 40% requirement found in HRS § 281–39.5 would be applied to Applicant's application. Upon further review, however, the Director noted that HRS § 281–39.5 is not applicable to private day care centers and, therefore, would not be applied to Applicant's application. While the record does not provide specific details, after discovery of this mistake, Ms. Apostolidis was apparently called to inform her of the inapplicability of HRS § 281–39.5.[8] The relevant portions of the minutes of the August 2, 2003 meeting state:

> *[Commissioner Leinaala Enos (Enos)]:* Yes, the notices mailed out, was 75 out of 78 within 100 feet, and 93 out of 101 within 500 feet, meeting the requirements of law. Then you state 117 parcels that are entitled to protest, and 10 protests by properties within 500 feet, and then you have the 40 percent.
>
> *[The Director]:* Okay. *The 40 percent does not apply here.*
>
> *Enos:* Okay. It does not apply here, because of the church?
>
> *[The Director]:* At the time that we made that statement, we did [sic] go back to verify in our statute, the 40 percent majority protest, ah, not majority, the 40 percent protest is applicable when there is a school. *When we went back to check [the] statute, which is 281–39.5, it deals, it excludes private day care centers, which is Mokuaikaua Church.*
>
> *Enos:* I see.
>
> *[The Director]:* It also excludes applications in resort zones, and that's this, resort, this is a Resort zone, so, *the 40 percent does not apply, and we called Ms. Apostolidis and informed her of that.*

7. The hearing reconvened at 7:30 P.M. on August 2, 2003.

8. It would appear that Ms. Sandy Apostolidis (Ms. Apostolidis) was informed of the mistake at some point between July 3, 2003 and August 2,

(Emphases added.) (Boldfaced font in original.)

The Director again confirmed that there were 117 owners within 500 feet eligible to protest. Therefore, the majority for protest purposes was 59 votes. The Director then provided an update on the protests received. She advised Appellee that it had received 55 protest votes by owners of record against the license application. This amount was four votes short of the 59 protest votes required for a majority protest at that time.

At the meeting, Appellant indicated he "live[s] at the Kona Plaza" and raised concerns regarding the counting of parcels owned by the State or the County that contained roads or offices. After a discussion as to whether or not State property and roads should be included in the amount of total properties, the Director noted that even if five State parcels were not included in the total number of parcels (117 parcels), the majority protest votes would be 57 protest votes (112 votes divided by 2, plus one vote). The Director pointed out that thus, at 55 votes, the protestors would be two votes short of the majority vote required.

At this meeting, Applicant lodged its concern that the continuance of the public hearing allowed for further protests after the original public hearing date. Ms. Apostolidis again voiced her objection that the meeting notice that was sent out was misleading, in that it did not correctly state Applicant's address and did not disclose that Mr. Medeiros owned another local business, Michaelangelo's.

At the same meeting, Department of Liquor Control Commissioners George Harai and Gary Yoshiyama voiced their concerns about their inability to perform an internal inspection of the proposed site. Both Commissioners believed an inspection of the interior of the proposed site was appropriate, in part to verify whether it was possible to soundproof the interior.

2003. The minutes of the August 2, 2003 meeting include statements by the Director that upon learning that HRS § 281–39.5 did not apply to Applicant's liquor license, Ms. Apostolidis was apparently called to notify her of the mistake.

Appellee decided to approve the application pending a decision from the State Attorney General on an interpretation of HRS §§ 281–57 and 281–59 regarding whether State and County properties should receive notice, and subject to conditions relating to soundproofing of the premises, security personnel, and a final inspection of the premises.

On September 9, 2003, a deputy attorney general (AG) provided a written opinion regarding HRS §§ 281–57 and 281–59. He indicated that the State and County should be treated as owners of land pursuant to HRS §§ 281–57 and 281–59. According to the written opinion, however, under HRS § 281–57(c), an applicant would not be required to provide notice to the State or County for parcels consisting of roadways, nor would such property be counted as parcels entitled to protest. The matter was then placed on Appellee's October 2, 2003 agenda.

During the October 2, 2003 meeting the application was discussed in conjunction with the AG's opinion. Based on the opinion, five roads were eliminated from consideration, reducing the total number of parcels entitled to protest from 117 to 112, which also reduced the total number of parcels needed for a majority protest to 57 parcels.

Upon further review by Appellee, two protests were disallowed in accordance with HRS § 281–59(a).[9] *See supra* note 1. This decreased the number of protests from 55 to 53, still below the 57 protests needed for refusal of the license. Appellee continued to approve the application with the previously mentioned conditions and the payment of an "advertising fee" due for the publication of the notice of the October 2, 2003 hearing.

On October 16, 2003, Appellant petitioned Appellee for a rehearing of its October 2, 2003 decision granting the liquor license. A hearing on Appellant's petition for rehearing was set for November 6, 2003. As requested, Appellee provided Appellant with copies of documents listing owners and addresses situated within a distance of 100 and 500 feet of the proposed license premises.

On October 28, 2003, the Director submitted to Appellee the law, rules, list of owners, proof of mailing, and faxes to Appellant to prove compliance with his request.

On October 30, 2003, Appellant submitted a list of 32 owners who stated that they "[d]o not recall" having received notice of the subject application.

On November 6, 2003, the petition for rehearing was denied. The Findings of Fact, Conclusions of Law and Decision and Order denying the petition was filed on November 19, 2003.

On December 19, 2003, Appellant appealed the November 19, 2003 Findings of Fact, Conclusions of Law and Decision and Order Denying Appellant's Petition to the court.

On March 23, 2004, Appellee filed a Motion for Summary Judgment in the court.

On April 19, 2004, the court heard oral arguments and recommended that Appellee's counsel withdraw its Motion for Summary Judgment as counsel could not cite law to support such a motion in an agency appeal.[10]

On July 12, 2004, Appellant's appeal to the court was heard. During the July 12 oral arguments, Appellant's attorney stated that Ms. Yoneyama, the person who mailed out the notices for the July 3, 2003 hearing,

---

9. Two properties of the total 55 protests each had two owners of record, but only one party, in each instance, had protested. The court stated that, "[t]he two protests that were disallowed [included] Unit 217, Kona Plaza, [leased by Claudia and Leonard B. Ordonia] and Tax Map Key:(3) 7–5–007–044, [owned in fee by Mokuaikaua Church and leased by Hanama Partners, et. al.,] for failure to include protests by a majority of the ownership interests affected.... Protesters were then left with 53 parcels protesting the license." These protests were not included, then, under HRS § 281–59(a).

10. Appellee argued in support that (1) the state and county office buildings were properly included in the determination of the total number of properties entitled to protest, (2) a certification of mailing is sufficient proof to show that property owners were notified, and (3) while HRS § 281–60 (Supp.2005), entitled "Further application," includes other factors Appellee may take into consideration when reviewing a license application, this section is limited to "[f]urther applications ... for an application that had been previously denied, refused, or withdrawn," and, therefore, this evaluation is inapplicable in this case.

admitted in discussions with Appellant's attorney that five of the notices were returned undeliverable. On September 10, 2004, the court rendered its findings of fact and conclusions of law, and a final judgment.

On October 8, 2004, Appellant filed his notice of appeal to this court.

## II.

On appeal, Appellant argues that (1) Appellee's decision-making was based on erroneous findings of fact and conclusions of law, (2) Appellee engaged in rule-making without public input, (3) Appellee violated its own enabling statute, (4) Appellee failed to acknowledge legitimate protest votes filed in accordance with its "handouts" to the public, and (5) Appellee violated Appellant's constitutionally protected property rights as well as his right to due process.[11]

11. Appellee answers that (1) Appellee's decision-making was based on its valid findings of fact and conclusions of law, (2) Appellee has not engaged in de facto rule-making without public input which would violate the protections provided by administrative procedural laws, (3) Appellee did not violate its own enabling statute, (4) Appellee acknowledged legitimate protest votes filed in accordance with its handouts to the public, and (5) Appellee has not violated Appellant's constitutionally protected property rights or his right to due process.

12. HRS § 281-17, entitled "Jurisdiction and powers," states in relevant part:

(a) The liquor commission, within its own county, shall have the *sole jurisdiction, power, authority, and discretion*, subject only to this chapter:
(1) *To grant, refuse, suspend and revoke any licenses* for the manufacture, importation, and sale of liquors;
....
(4) From time to time to *make, amend, and repeal such rules, not inconsistent with this chapter*, as in the judgment of the commission seem appropriate for carrying out this chapter and for the efficient administration thereof, and the proper conduct of the business of all licensees, including every matter or thing required to be done or which may be done with the approval or consent or by order or under the direction or supervision of or as prescribed by the commission; which rules, *when adopted as provided in chapter 91 shall have the force and effect of law;*
....

Appellant requests that this court "reverse" the court's decision and rescind Appellee's granting of a liquor license to Applicant. In the alternative, Appellant requests that this court award any other relief that it deems appropriate, citing *Nakamine v. Bd. of Trs.*, 65 Haw. 251, 255, 649 P.2d 1162, 1165 (1982) (holding that "[w]here an administrative agency, by the failure to follow its rules, prejudices the substantial rights of a party before it, it may be necessary for the court" to fashion appropriate relief).

## III.

Generally, pursuant to HRS § 281-17 (Supp.2005),[12] Appellee's decisions are final subject to judicial review under HRS chapter 91. *See* HRS § 91-14(g) (1993).[13] On appeal this court determines whether the circuit court's decision on review of the agency decision was right or wrong.

*The exercise by the commission or board of the power, authority, and discretion vested in it pursuant to this chapter shall be final and shall not be reviewable by or appealable to any court or tribunal, except as otherwise provided in this chapter or chapter 91.*
(Emphases added.)

13. HRS § 91-14, entitled "Judicial review of contested cases," states in relevant part:

(a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.] ...
....
(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which *this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) to the agency's decision.* Sierra Club v. Office of Planning, 109 Hawai'i 411, 414, 126 P.3d 1098, 1101 (2006) (citations omitted) (emphasis added). "Under [the right/wrong] standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *Teller v. Teller,* 99 Hawai'i 101, 107, 53 P.3d 240, 246 (2002) (internal quotation marks and citations omitted).

"[U]nder HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." *Sierra Club,* 109 Hawai'i at 414, 126 P.3d at 1101 (quoting *In re Hawaiian Elec. Co.,* 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996)). In addition, an agency's conclusions of law are reviewed de novo under the right or wrong standard. *Loui v. Bd. of Med. Exam'rs,* 78 Hawai'i 21, 25, 889 P.2d 705, 709 (1995).

## IV.

▇▇▇ As to argument (1), Appellant challenges Appellee's November 19 finding of fact (finding) no. 19 [14] regarding notice to "state and county buildings," the court's conclusion of law (conclusion) [15] no. 4, that "State and County office buildings were properly

---

14. Finding of fact (finding) no. 19 states:

> With respect to Petitioner's allegation No. 3 that under the doctrine of Ejusdem Generis, the statute should not allow State and County buildings to be counted, the Commission is satisfied with the opinions of the Attorney General and Corporation Counsel that roadways should not be required to be noticed nor counted as "affected" properties, but that *State and county buildings, such as offices, schools, fire stations, police stations, etc., enjoy the same ability to notification and protest as any private entity* and are not precluded from being counted under the doctrine of Ejusdem Generis. (Emphasis added.) There was no written opinion from the corporation counsel but a deputy corporation counsel was present at the October 2, 2003 meeting and explained the AG's opinion to the commissioners.

The doctrine of ejusdem generis states that "where general words follow specific words in a statute, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Peterson v. Hawaii Elec. Light Co.,* 85 Hawai'i 322, 328, 944 P.2d 1265, 1271 (1997) (citing *Richardson v. City & County of Honolulu,* 76 Hawai'i 46, 74, 868 P.2d 1193, 1201 (1994)).

The doctrine of ejusdem generis does not apply in this case because there is no enumeration by specific words. Here the relevant words of HRS § 281–59 include "[o]wners and lessees of record of real estate and owners of record of shares in a cooperative apartment...." It is true that "owners of record" and "lessees of record" are general terms, however, there is no enumeration of specific words so as to indicate any establishment of a class to which "owners of record" or "lessees of record" is restricted. The rule of ejusdem generis is therefore inapplicable to this

statute. *See State v. Tin Yan,* 44 Haw. 370, 377–78, 355 P.2d 25, 30 (1960) (holding that the doctrine of ejusdem generis was inapplicable to the statutory phrase "acquire by exchange or otherwise" because "there [was] no enumeration of specific words so as to indicate any establishment of a class to which 'otherwise' is restricted"). Nevertheless, as indicated *infra,* the court's conclusions nos. 4 and 7 were ultimately correct.

15. The court's relevant conclusions of law are as follows:

> 4. *State and County office buildings were properly included in the determination of the total number of properties entitled to protest.*
> 5. The views and opinions of the office of the Hawai'i State Attorney General are not binding on this [c]ourt. Nevertheless, the analysis and conclusions reached in the opinion of the [AG] presented to the [c]ourt as applied to the facts in this matter are sound and the [c]ourt applies such reasoning to the resolution of the issues in this appeal.
> . . . .
> 7. Statutes adopted for review and permitting of liquor licenses in Hawai'i provide:
> a) *State and County officials, as owners of real estate parcels other than roadways, may make a protest for each such public parcel owned,* and each such parcel should be counted in determination of the number of parcels needed for a majority protest vote; and
> b) The applicant for a liquor license is not obligated to provide notices to the State or County as owners of the road, and roadway parcels should not be counted in a determination of the number of parcels needed for a majority protest vote.

included in the determination of the total number of properties entitled to protest," conclusion no. 5, that "[t]he opinion of the [AG] presented to the [c]ourt as applied to the facts in this matter are sound and the [c]ourt applies such reasoning to the resolution of the issues in this appeal," and conclusion no. 7, that "State and County officials, as owners of real estate parcels other than roadways, may make a protest for each such public parcel owned, and each such parcel should be counted in determination of the number of parcels needed for a majority protest vote[.]"

In connection with his first argument, Appellant contends in sub-argument (a), that the legal conclusions in the AG's opinion lead to an absurd and irrational result, thereby violating HRS § 1–15 (1993) [16]; in (b), that the 2001 amendments to HRS chapter 281 were designed to prevent an "abuse of process"; in (c), that when questions regarding an applicant's fitness are raised, the legislature crafted HRS § 281–59(c)(2) to shift the burden to the applicant to prove its fitness, not to the neighborhood residents; and in (d), that the meeting notice provided by Applicant under HRS § 281–57 was insufficient because it "deliberately obfuscate[s] that citizen's property rights were at stake."

## V.

### A.

Although denominated a finding, Appellee's finding no. 19 is a conclusion of law because it concerns the interpretation of HRS § 281–59. As to this matter, HRS § 281–59 enumerates three groups that may protest the issuance of a license: (1) "regis-

tered voters," (2) "owners and lessees of record of real estate," or (3) "owners of record of shares in a cooperative apartment." [17] HRS § 281–58 (1993) [18] refers to the same three groups. Only the second category, "owners and lessees of record of real estate," is in dispute in this case. The term "owner" is not defined in the "Definitions" section of HRS chapter 281.

Pursuant to HRS § 1–14 (1993),[19] words of a statute are to be generally understood in their most common, general, or popular definition. *See State v. Moniz,* 69 Haw. 370, 374, 742 P.2d 373, 376 (1987) (noting that "[a]lthough [this court has] rejected an approach to statutory construction which limits us to the words of a statute, no matter how clear they may appear upon perfunctory review, it is still fundamental that the starting point for interpreting a statute is the language of the statute itself" (citation omitted)); *In re Taxes, Hawaiian Pineapple Co.,* 45 Haw. 167, 177, 363 P.2d 990, 996 (1961) (stating that, when "construing or interpreting any statute, the one and only quest is to ascertain the intent of the legislature[ ]" and that "[t]o that end the words of a statute normally are to be taken in their popular sense[;] . . . the words of statutes . . . should be interpreted where possible in their ordinary, everyday senses[ ]" (citations omitted)); *Ottmann v. Young,* 12 Haw. 303, 306 (1900) (stating that the words of a statute "should be taken in their usual sense unless there is sufficient [evidence] to indicate that they were intended to be taken in some other sense[ ]").

But "[w]here a term is not statutorily defined . . . we may rely upon extrinsic aids to determine such intent. Legal and lay dictionaries are extrinsic aids which may be

---

(Emphases added.)

**16.** *See infra* note 22.

**17.** *See supra* note 1.

**18.** HRS § 281–58 (1993), entitled "Protests," states:

> Protests against the granting of a license upon such application may be so filed by any registered voter for the area within five hundred feet of the nearest point at which the applicant proposes to establish or continue the applicant's business under the license applied for, or *by any owner or lessee of record of real*

*estate or by any owner of record of a share in a cooperative apartment* situated within a distance of five hundred feet from the nearest point of the premises for which the license is asked to the nearest point of such real estate or cooperative apartment.
(Emphasis added.)

**19.** HRS § 1–14, entitled "Words have usual meaning," states that "[t]he words of a law are generally to be understood in their *most known and usual signification,* without attending so much to the literal and strictly grammatical construction of the words as to their *general or popular use or meaning.* (Emphases added.)

helpful in discerning the meaning of statutory terms." *Ling v. Yokoyama*, 91 Hawai'i 131, 133, 980 P.2d 1005, 1007 (App.1999) (internal quotation marks and citations omitted). This court has also stated that, "where the statutory language is plain and unambiguous, [this court's] sole duty is to give effect to its plain and obvious meaning." *Nat'l Union Fire Ins. Co. v. Ferreira*, 71 Haw. 341, 345, 790 P.2d 910, 913 (1990) (citing *Kaiser Found. Health Plan, Inc. v. Dep't of Labor & Indus. Relations, Unemployment Ins. Div.*, 70 Haw. 72, 82, 762 P.2d 796, 801 (1988)).

### B.

The language of HRS § 281–59 is "plain" and "unambiguous." "Owner of record" is defined as "[a] property owner in whose name the title appears in the public records." *Black's Law Dictionary* 1138 (8th ed.2004). In this case, both parties agree that the State and the County are in fact the owners of record of their respective parcels of land. Based on the foregoing definitions, the government would fall within the definition of "owner of record" for government-owned real estate parcels because the government is in fact the "property owner in whose name the title appears in the public records." *Id.*

■ In addition, " 'departure from the plain and unambiguous language of the statute cannot be justified without a clear showing that the legislature intended some other meaning would be given the language.' " *In re Lower Mapunapuna Tenants Ass'n*, 73

Haw. 63, 68, 828 P.2d 263, 266 (1992) (quoting *Espaniola v. Cawdrey Mars Joint Venture*, 68 Haw. 171, 179, 707 P.2d 365, 370 (1985)). Here there is no indication in the statute that the term owner of record should be given a special interpretation other than its common and general meaning. Therefore, under a plain and unambiguous reading of HRS § 281–59, real estate owned by the government fall within the statute.[20]

The court, then, was correct in its conclusions nos. 4 and 7, respectively, that the "[S]tate and County office buildings were properly included in the determination of the total number of properties entitled to protest," that "State and County officials, as owners of real estate parcels other than roadways, may make a protest for each such public parcel owned, and each such parcel should be counted in determination of the number of parcels needed for a majority protest vote[,]" and that "[t]he applicant for a liquor license is not obligated to provide notices to the State or County as owners of the road, and roadway parcels should not be counted in a determination of the number of parcels needed for a majority protest vote."[21]

### C.

Appellant's sub-argument (1)(a) asserts, however, that the AG's opinion leads to an absurd and irrational result in violation of HRS § 1–15,[22] because the occupants of the buildings in question never receive the notice,[23] the persons who would receive the

---

**20.** Appellee argues that, the fact that HRS § 281–39.5 specifically created a subsection to protect "public" schools and playgrounds, may also lend support to the finding that government buildings fall within the statute.

**21.** The court was ultimately correct as to conclusion no. 5. *See supra* note 14.

**22.** HRS § 1–15, entitled "Construction of ambiguous context," states in relevant part:
 Where the words of a law are ambiguous:
 (1) The meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.
 (2) The reason and spirit of the law, and the cause which induced the legislature to enact

it, may be considered to discover its true meaning.
 (3) *Every construction which leads to an absurdity shall be rejected.*
(Emphasis added.) While Appellant's sub-argument (1)(a) as to HRS § 1–15 is addressed, HRS § 281–59, as mentioned before, is not ambiguous.

**23.** Appellant maintains, as a sub-argument in this section, that even if occupants of government buildings were allowed to receive notice, the question of who would determine the building's position remains. However, there is no mention in HRS § 281–57(c)(1) as to which government official should decide whether an objection should be lodged against an application. Pertinent here, the statute only requires that notices be sent to "owners and lessees of record,"

notice would not be the ones impacted by the activities connected with the liquor establishment, notice of the license application would not go to employees located on government sites in Kona but, rather, to the government owner in Hilo, Hawai'i, located "[a]pproximately 85 miles away" from the building, and the staff that manages the government buildings will not directly experience the *"painful nightmare* of trying to sleep through the night." (Emphasis in original.)

According to the AG's opinion, "[A]ct 67, An Act to Regulate the Manufacture and Sale of Intoxicating Liquors, Repealing Chapter 103 of the Revised Laws of Hawaii, ... introduced the concept of 'local option' to Hawaii law, which specifically involves the nearby property owners in the application process"[;] [24] thus, "[c]learly indicating that it is the intent of the Legislature to actively involve the affected community (those who live and work in the radius) in the application process for both notice and protest purposes." The AG opinion explains, therefore, that "[s]ince not specifically excluded by the statute, it is clear the state and counties, as owners of real estate parcels within the radius of that defined community, are included for both notice and protest purposes." According to the AG, "[i]t is difficult to argue that the state or county, as owners of real estate within the radius, on behalf of their employees and customers, are not viable and contributing members of the community and thus have a real interest in the health, safety, morals and welfare of the area."

In light of the considerations which were enumerated in the AG opinion, it cannot be said, as a matter of law, that applying a plain and unambiguous construction to HRS §§ 281–57 and 281–59 would result in an absurd and irrational construction. It is evident that government employees and their customers or clients and government itself may reasonably have an interest in the licensing of an establishment that serves alcoholic beverages within the vicinity of its operations. We hold, then, that state and county entities, as owners of real property, are included as owners for both notice and protest purposes as set forth under HRS §§ 281–57 and 281–59.

### D.

Appellant's sub-argument (1)(b) declares that the legislative intent of the 2001 amendments to HRS chapter 281, contained in Act 257,[25] (the 2001 amendments) was to "establish additional requirements and procedures for the investigation, processing, and approval or denial of liquor license applications." Appellee responds that, "[A]pplicant has pointed to no changes made by the 2001 Amendments, which [Appellee] has violated." Inasmuch as Applicant filed its application for a liquor license on March 3, 2003, the 2001 amendments apply to the application.

Act 257 adopted three amendments relevant in this case. The amendments (1) required proof of a substantial change in circumstances that caused the previous denial, refusal, or withdrawal of a license application, (HRS § 281–56(a)(8)),[26] 2001 Haw. Sess.

who presumably would appropriately respond, if necessary.

24. Act 67 of the 1905 legislature stated in relevant part that no license shall

be issued for any *premises without the written consent of a majority of the property holders* within a distance of 1,000 feet measured in a straight line from the nearest point of the premises for which the license is asked to the nearest point of each of the surrounding properties, which consent shall be acknowledged as are deeds when entitled to record and filed with the application[.]

1905 Haw. Sess. L. Act 67, § 7 at 136 (emphasis added).

25. 2001 Haw. Sess. L. Act 257 at 660–66.

26. The following changes were made to HRS § 281–56, entitled "Report by investigator," by the pertinent 2001 amendments (added language is underscored below):

(a) On every application referred to the investigator under section 281–55, the investigator shall report in writing to the liquor commission and, if the application is for a license of any class other than class 7, class 8, or class 9, such report shall show:

. . . .

(8) For the next application for a license that was previously denied, refused, or withdrawn, evidence, to be provided by the applicant, of a substantial change in the circumstances that caused the previous denial, refusal, or withdrawal; and

. . . .

L. Act 257, § 5 at 663; (2) prohibited promotional material on the mailing envelope (HRS § 281–57),[27] 2001 Haw. Sess. L. Act 257, § 6 at 664; and (3) defined "a majority of the owners and lessees" of real estate as necessary to be counted as a legitimate protest (HRS § 281–59(a)(2)),[28] 2001 Haw. Sess.

> (b) ... Upon written request, a copy of the report shall be furnished to any requester.
> (c) The applicant and any protester may challenge findings contained in the investigator's report before or at any hearing on the application.

2001 Haw. Sess. L. Act 257, § 5 at 662–63 (underscoring in original).

**27.** The pertinent 2001 amendments made the following changes to HRS § 281–57 (Supp. 1998), entitled "Preliminary hearing; notice of public hearing," (added language is underscored below):

> (a) Upon the filing of the investigator's report upon any application the liquor commission may hold a preliminary hearing and upon such preliminary hearing it may deny the application. A notice of preliminary hearing on a previously denied, refused, or withdrawn application shall be given seven days before the preliminary hearing to any person who submitted a written request for notice.
> ....
> The notices required under this subsection shall be mailed at least forty-five days prior to the date set for the hearing. No promotional information shall be allowed on, or accompany the notice. Before the hearing, and within seven days of having mailed the notices, the applicant shall file with the commission an affidavit that the notices have been mailed in compliance with this subsection. In addition to the affidavit (which shall be made available within the same seven-day period with proof of having mailed the notices), the applicant shall include both a master list of one hundred per cent of addressees and addresses required by paragraphs (1), (2), and (3), and another mailing list consisting of the portion of addressees and their respective addresses who were mailed the notice purposely needed to meet the requirements of paragraphs (1), (2), and (3). The affidavit, master list, and mailing list shall be made available within seven days (of the mailing of the notice by the applicant) by the commission for public review upon request. For purposes of this section "master list" means every owner and lessee who would otherwise be required to receive notice of the public hearing according to the requirement of paragraphs (1), (2), and (3), even if they were not actually included in the two-third or three-fourths requirement (as the case may be) of paragraph (1) or (2), and every condominium project and cooperative apartment qualifying in paragraph (3). The commission shall can-

L. Act 257, § 7 at 665. But as Appellee argues, this case does not involve a license which was earlier denied, refused, or withdrawn. No promotional material was placed on the envelope, and finally the protest votes were counted exactly as set forth in Act 257.[29] *See* discussion *supra.*

> cel the hearing if not receiving the affidavit prior to the hearing or if discovering that the affidavit is false."

2001 Haw. Sess. L. Act 257, § 6 at 663–64 (underscoring in original).

**28.** The relevant portions of HRS § 281–59 (Supp.1995), amended in 2001, state (added language is underscored and deleted language is bracketed):

> **Hearing[.]; rehearing.** (a) ... The liquor commission shall accept all written or oral testimony for or against the application whether the application is denied, refused, or withdrawn. Within fifteen days [thereafter] after the hearing, or within thirty days thereafter if in its discretion the commission extends the fifteen days to thirty days, and gives public notice of same, the commission shall give its decision granting or refusing the application;
> ...
> ....
> For purposes of defining "a majority of the owners and lessees of record of real estate and owners of record of shares in a cooperative apartment", each property counts only once. A protest submitted by the majority of the co-owners or the majority of the co-lessees of a property shall constitute a protest by all the owners or lessees of record of that property. Owners or lessees who own more than one property may count each property.

2001 Haw. Sess. L. Act 257, § 7 at 664–5 (underscoring in original).

**29.** Appellant also maintains that the AG's opinion "utterly fails to follow and uphold the intent of the statute found in HRS, Chapter 281–57 or the intent of the legislators as is found in legislature records." However, Appellant fails to provide examples or citations to the record indicating how Appellee violated the legislative intent of the statute. Appellant must satisfy Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7), which directs that the appellant's opening brief shall contain "[t]he argument, exhibiting clearly the points of fact and of law being presented, citing the authorities relied upon. The argument may be preceded by a concise summary." *Weinberg v. Mauch*, 78 Hawai'i 40, 49, 890 P.2d 277, 286 (1995) (quoting HRAP Rule 28(b)(7)). As pointed out by Appellee, Appellant fails to present any argument on this point, and, therefore, we decline to consider this sub-argument. *Ass'n of Apartment Owners at Wailea Elua v. Wailea Resort Co.*, 100 Hawai'i 97, 110, 58 P.3d 608, 621

### E.

Appellant's sub-argument (1)(c) maintains that HRS § 281–59(c)(2) [30] places the burden on an applicant to prove its fitness for the granting of a liquor application, not on neighborhood residents to prove its unfitness. Here, Appellant again fails to cite specifically to the record on appeal or to cite authority.[31] *See Lanai Co. v. Land Use Comm'n*, 105 Hawai'i 296, 309 n. 31, 97 P.3d 372, 385 n. 31 (2004) (holding that "[t]his court is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions" (citations omitted)). As with part of argument 1(b) above, *see supra* note 29, argument 1(c) is not addressed, because Appellant fails to present any argument on this point and fails to abide by HRAP Rule 28(b)(7).

### F.

■ Appellant's sub-argument (1)(d) contends that Appellee failed to meet the requirements of HRS § 281–57,[32] because, "[a]llmost one-third of the noticed property owners signed a letter stating this notice did not come through their mail[.]" Appellant further asserts that if this is the case, "[t]hen it has to be asked is a mass mailing prepared by the applicant designed to actually be opened? Or does the notice itself so closely resemble junk mail that it could not never [sic] serve the purpose of the notice that

legislature [sic] intended it to provide?" Appellant then concludes that, "[h]ad the envelope not misled the public into believing it was junk mail, the contents would have been read and provoked the residents to organize immediately." [33]

Appellant's argument is speculative and conclusory and based on allegations not supported by the record or the law. Ms. Yoneyama, Applicant's agent, filed an affidavit as required under the statute.[34] Attached to the affidavit was a "master list" of every owner and lessee who would otherwise be required to receive notice of the public hearing under the statute, as well as the mailing list of those who were actually mailed the notice pursuant to HRS § 281–57. Accordingly, Applicant provided notification as required. Furthermore, while Appellant challenges the form of the mailing, he does not challenge the propriety of the affidavit filed by Ms. Yoneyama pursuant to HRS § 281–57,[35] as indicated under the statute.

### VI.

■ With regard to Appellant's argument (2), Appellant contends that Appellee's decision regarding government parcels under HRS § 281–59 constitutes rule-making pursuant to HRS §§ 91–2,[36] entitled "Public information"; 91–3, entitled "Procedure for adoption, amendment, or repeal of rules"; and 91–4, entitled "Filing and taking effect of

(2002) (holding that a point that was raised in opening brief but not argued may be deemed waived by the court). *See* HRAP 28(b)(7).

**30.** *See supra* note 1.

**31.** Appellant merely states, without specific citation to the record or to authority that:

The record on appeal shows through the public hearings legal counsel did not offer this option to the LIQUOR COMMISSION. Nor did the agency director, Dir. Pakele, bring this statute to the attention of the Commissioners.... Had the agency and legal counsel provided correct counsel the LIQUOR COMMISSION would not have had to worry about the consequences of the litigation that Mr. Black threatened to initiate. The burden would then have shifted to the applicant to prove his case, rather than resting, yet again, on the weary shoulders of the neighborhood residents. The neighborhood should not have to pay with their right to

sleep at night because of the incompetence of staff and legal counsel.
(Capitalization in original.)

**32.** *See supra* notes 2 and 4.

**33.** *See infra* note 44.

**34.** *See supra* note 4.

**35.** To reiterate, HRS § 281–57(c) states in pertinent part that "[t]he commission shall cancel the hearing if not receiving the affidavit prior to the hearing or if discovering that the affidavit is false."

**36.** HRS § 91–1 (1993) defines "rule" as follows:
(4) "Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency....

rules," subsection (a).[37] However, as previously mentioned, where the language of the statute is clear and unambiguous, this court will give it full effect. *See Ferreira*, 71 Haw. at 345, 790 P.2d at 913. Inasmuch as we hold that government entities may be considered as owners of record within the plain language of HRS §§ 281–57, 281–58, and 281–59, Appellee's actions did not constitute "rule-making," but merely applied the language in the statute.

## VII.

Appellant's argument (3) posits that Appellee violated its enabling statute, HRS § 281–17,[38] because (a) "[p]rior bad acts of a liquor license applicant should be considered during discussion of new liquor license applications," (b) "[a]gency staff deliberately shielded a liquor license applicant with disingenuous legal arguments," (c) "[f]indings in the investigator's report may be challenged by the community, shifting the burden of proof to [Appellee]," and (d) the protesting property owners were required to "[p]roduce a larger number of protest letters than [Ap-

pellee initially] instructed [them] to produce."

## A.

With regard to Appellant's sub-argument 3(a), the record illustrates that Appellee considered the past history of Applicant. The investigator's report noted that Mr. Medeiros was the owner of Michaelangelo's and concluded that Michaelangelo's was operated in a reputable manner. As noted below, Appellee had information before it to appropriately consider the prior acts of Applicant.

As to Appellant's sub-argument (3)(b), Appellant fails to point to any evidence in the record that "[a]gency staff deliberately shielded ... [A]pplicant[.]" The investigator's report provided information to Appellee in accordance with HRS § 281–56 (Supp. 2005).[39] The record reflects that the investigator's report fulfilled the statutory requirements, including, (1) "a description of the premises"; (2) a statement of persons holding prior liquor licenses and "the manner in which the premises have been operated and the business conducted under the previous license;" and (3) "[a]ny and all other matters and things, [40] which in the judgment of the

---

**37.** Appellant cites to these statutes without providing a reference to the record as to how the Appellee violated each of them. Appellant merely states:

> Under HRS §§ 91–2, 91–3, 91–4(a) (1993), whenever the LIQOUR [sic] COMMISSION has promulgated rules, the LIQOUR [sic] COMMISSION is required to provide public information, provide for a public hearing in which interested persons could submit their viewpoints, obtain the approval of the governor[,] and file the rule with the lieutenant governor.

(Citation omitted.) This court may "disregard [a] particular contention" if the appellant "makes no discernible argument in support of that position[.]" *Norton v. Admin. Dir. of the Court*, 80 Hawai'i 197, 200, 908 P.2d 545, 548 (1995) (citing HRAP Rule 28(b)(7)). Further, the appellate courts are not obligated to search the record to crystallize the parties' arguments. *See Lanai Co. v. Land Use Comm'n* 105 Hawai'i 296, 309 n. 31, 97 P.3d 372, 385 n. 31 (2004). Thus we need not address these matters further.

**38.** *See supra* note 12.

**39.** HRS § 281–56, "Report by investigator," states in relevant part:

> (a) On every application referred to the investigator under section 281–55, the investiga-

tor shall report in writing to the liquor commission . . .:

> (1) A *description of the premises intended to become the licensed premises, and the equipment and surrounding conditions* including the relationship to surrounding residences which may share a common boundary or a common structure with the premises proposed for licensing;
> (2) *If the application is made by a person who has held a prior license for the same or any other premises within two years past, a statement as to the manner in which the premises have been operated and the business conducted under the previous license;*
> . . . .
> (9) *Any and all other matters and things, which in the judgment of the investigator pertain to or affect the matter of the application, or the issuance or the exercise of the license applied for[.]*

(Emphases added.)

**40.** Mr. Edwin N. Frietas, the liquor control investigator who produced the report (the Freitas Report) on Applicant pursuant to HRS § 281–56(a)(1), provided a description of the premises and the interior, stating that the "[i]nterior consist[s] of a bar and lounge, ballroom, dance floor, stage, VIP balcony and room, office spaces, jazz and piano room, liquor storage room, and sound booth."

investigator, pertain to or affect the matter of the application or the issuance or the exercise of the license applied for[.]" HRS § 281–56(a)(1), (2), and (9). The record also includes the final opinion of the investigator that, "[b]ased on the information provided by the [A]pplicant, this investigator is of the opinion that the [A]pplicant is fit and proper to hold a liquor license."

As discussed above, Appellee is vested with discretion to approve a liquor license application by HRS § 281–17. Appellant and other opponents of the license were afforded opportunities to oppose the granting of the license at the July 3, August 2, and October 2, 2003 hearings. Appellee thus was

informed of Appellant's objections. The exercise of Appellee's discretion may not be overturned unless the decision was "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record"; or (2) "arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion." HRS §§ 91–14(g)(5) and (6).[41]

Given the record, it does not appear that Appellee's decision was "clearly erroneous" or "characterized by abuse of discretion." Furthermore, Appellee's decision appears to have been supported by reliable, probative and substantial evidence.[42] *Kaiser Found.*

---

The Freitas Report, pursuant to HRS § 281–56(a)(2), notes that Mr. Medeiros holds a prior liquor license, stating that "Mr. Michael Medeiros is President of Kona Restaurant Investment Corporation, dba, Michaelangelo's, the holder of a Dispenser General Category 3B, liquor license." The report references a supplementary report submitted by Mr. Francisco Flatts, Liquor Control Investigator III, which relates that "[t]he applicant, Michael Medeiros, is the holder of a Dispenser General License, DG–102, dba Michaelangelo's. It is the opinion of this investigator that the licensee has operated his business in a reputable manner."

The Freitas Report, pursuant to HRS § 281–56(a)(9), also contains general lease information about the premises, recounting that the "[l]ease shall commence on November 1, 2002, and terminate on March 31, 2008." With respect to the "kind of business" that will be operated on the premises, the report states that "Applicant intends to employ approximately 20 employees in the operation of this establishment. Light pupus will be provided and available to its customers. Applicant intends to certify six persons in active charge to supervise the sale, service, and consumption of liquor within the licensed premises."

**41.** In addition to Appellant's challenges under HRS § 281–56, Appellant also contends that,

[t]he LIQUOR COMMISSION's efforts to remedy noise complaints from four nightclubs in Kailua–Kona were buried in the NEW BUSINESS section of the monthly agenda on two different occasions.

Burying the event in the agenda is, in and of itself, a direct violation of HRS § 92–7 which has been interpreted to mean, "It is not sufficient to list broad categories of items on the agendas, and general phrases such as "unfinished business" and "new business" [as it] will not comply with the Sunshine Law." Op. Att'y. Gen. No. 85–2 (1985).

However, as Appellee states in its Answering Brief,

[a] review of the Agenda will reveal certain things:

(1) the date of the meeting is October 2, 2003, well after the public hearing on the application was closed (July 2, 2003); (2) that Paparazzi appears as Unfinished Business directly above new Business and the review of complaints of loud noise from Michaelangelo's which was Mr. Medeiros' other establishment; and (3) Appellant's complaint that only a broad category is listed is also false as the Agenda states exactly what is being heard under New Business:

1. Review of complaint of loud music/noise emanating from the following licensed premises: Durty Jake's, Huggo's, Lulu's, and Michaelangelo's.

Appellee's response is consistent with the record. Hence, it does not appear there was a "burying" of the "event" in the agenda, and therefore, no violation of HRS § 92–7 occurred. Furthermore, as one commentator has noted, "Any final action taken in violation of Section[ ] ... 92–7 (notice) is voidable upon proof of a 'wilful violation.' " Jon M. Van Dyke, *Hawaii's Sunshine Law Compliance Criteria*, 26 U. Haw. L.Rev. 21, 31–32 (2003) (discussing enforcement of the Sunshine Law (quoting HRS § 92–11)). Nowhere in Appellant's opening brief does he provide proof or point to any evidence in the record that a "willful violation" occurred.

**42.** Appellant's argument in 3(c), that "[t]he findings in the investigator's report may be challenged by the community, shifting the burden to [Appellee]," is also disposed of inasmuch as we hold that there was no abuse of discretion by Appellee and that Appellee's decision was supported by reliable, probative, and substantial evidence.

Appellant maintains that Appellee may not "grant a liquor license absent a physical inspection of the interior," in light of the "challenge this community threw down alleging the investigator's report was inadequate." Appellant appears to rely on HRS § 281–56(c), which provides that "[t]he applicant and any protester may

*Health Plan, Inc.*, 70 Haw. at 81, 762 P.2d at 801 (stating that "an administrative agency's factual findings are presumptively correct, and cannot be set aside on appeal unless they are shown to be clearly erroneous in view of the reliable, probative and substantial evidence on the whole record," and that "discretionary determinations are reviewable for abuse" (citations omitted)).

### B.

■ Appellant contends in argument (3)(d), that the protesting property owners were required to produce a larger number of protest letters than Appellee initially instructed them to produce. We first note that Appellant did not raise the issue of the Director's incorrect statement in his December 19, 2003 appeal to the court. In the section of his notice of appeal entitled "[w]hy the [Appellant] is appealing," Appellant only stated that "[t]he action of [Appellee] will deny the affected owners and residents of the quiet enjoyment and use of their property and thereby diminish their property rights without due process of law." At oral argument held by the court on July 12, 2004, counsel for Appellant made only a brief mention of this matter.[43]

Second, as previously mentioned, the Director admitted her error and Ms. Apostolidis was notified in advance of the August 2, 2003 meeting that 40% as protest vote was incorrect. Appellant does not dispute this. Appellee continued the July 3, 2003 hearing to August 2, 2003, allowing Appellant the opportunity to gather more protest votes in opposition to the license application. In advance of the August 2, 2003 meeting, Appellee published general notices, including the agenda, in local newspapers. At the August 2, 2003 hearing, the Director did in fact announce the 40% figure was incorrect. Appellant was present at and participated in the meeting in which the Director made the announcement. As indicated before, the August 2, 2003 meeting was continued to await the AG opinion.

By letter dated September 26, 2003, the Director notified Appellant of the October 2, 2003 meeting and provided him a copy of the AG's September 9, 2003 letter. At the October 2, 2003 hearing, Appellee again tallied the protest votes received and determined that a majority protest vote had not been achieved. Accordingly, the record does not reflect that prejudice resulted from the Director's misstatement at the July 3, 2003 meeting. The Director corrected her error and Appellant was notified of the October 2, 2003 meeting when the amount of protest votes received was revisited by Appellee. Therefore, we are not persuaded by this argument.[44]

challenge findings contained in the investigator's report before or at any hearing on the application." However, Appellant fails to cite appropriate authority that requires such an inspection to proceed in light of a challenge to an inspector's report. HRS § 281–56(c) does not "shift the burden of proof to [Appellee]," as Appellant maintains, either by its plain language or by inference. Accordingly, Appellant's argument is not persuasive.

43. Counsel stated:

From the one incident where she announced to the public that only forty percent of the property owners had to protest, again, she did not make a subsequent announcement to change that to over fifty percent. Rather she held property owners to meeting a fifty percent without any notification that it had changed. And it ensued the protest-letter requirements dramatically, almost ten letters, I believe I wrote in my brief.

Later in the hearing, Appellant's counsel maintained that "[t]he two numbers just aren't adding up. If you go back, visit the subjects. She was

told possibly only forty percent had to protest of the property owners."

44. Appellant maintains that under HRS § 92–7 (Supp.2005), "[a]s [the change from 40% to 50%] affects a significant number of people, this action is in violation of HRS § 92–7 notice laws." Appellant appears to contend that Appellee violated HRS § 92–7 when it "[c]ondoned the mailing of a notice which so closely resembles junk mail," "[h]eld [the first hearing] 85 miles away in Hilo requiring no less than 4 hours of total driving," and continued the license application hearing, "[b]ut when the meeting actually arises [sic] the number [of votes] has been significantly raised without adequate warning."

First, HRS § 92–7 does not provide specifications as to the appearance of a mailing. Appellant raised similar arguments in the circuit court stating that, "[t]he notice looks exactly like hundreds of pieces of junk mail that the average Hawaii citizen gets in their mail every week.... [I]t looks like a flyer from a small, home-owned business with its simple nameless return ad-

## VIII.

■ Appellant's argument (4) contends that Appellee failed to acknowledge legitimate protest votes filed in accordance with its handouts to the public. He declares that the handout entitled "Guidelines for Filing Protests Relating to New Applications for a Liquor License," ("Guidelines") does not clearly indicate how a vote is to be counted when there is an owner and a lessee of a property. The Guidelines state that they are derived from "Section 281–58 and Section 281–59, [HRS]." The Guidelines at "C" relate that "[t]he protest shall contain the name and address of each person submitting a protest and each protestor shall sign and date such protest. Separate signatures are required for each spouse, co-owner or co-lessee. . . ." The Guidelines further declare under the heading "Filing" at "D", that "[e]ach owner, co-owner, lessee or co-lessee of record of real estate or owner of record of shares in a cooperative apartment within 500 feet of the premises who files a protest shall be counted as a single protest. A protest filed by an owner of multiple parcels . . . shall be counted for each parcel."[45]

Based upon a "plain" and "unambiguous" reading of HRS § 281–59, a majority of the co-owners or co-lessees must register a protest in order for that property to be counted as one protest vote. Any ambiguity in this case, however, would have no effect on the application. Even if Appellee were to count the two protest votes that were disallowed, *see supra* note 9, the two added votes would not result in a majority vote nullifying Applicant's application.

## IX.

■ Appellant's argument (5) is that Appellant's due process rights were violated by the granting of the license to Applicant. He asserts that the liquor establishment will severely undermine the current market value of each unit of the Kona Plaza Condominium. In support of this proposition, Appellant cites to an estimate provided by a lay person with no particular demonstrated or proven expertise in real estate valuation.[46] Without more,

---

dress." On this issue, the court stated in finding no. 3 that "[t]he process was sufficient to provide reasonable notice of the proceedings. The notice process did provide reasonable notice to the public agencies which own property within the area of concern." Appellant did not challenge finding no. 3 on appeal and is, therefore, bound by it. *See Bremer v. Weeks*, 104 Hawai'i 43, 63, 85 P.3d 150, 170 (2004) (holding that "findings of fact . . . that are not challenged on appeal are binding on the appellate court" (internal quotation marks and citations omitted)). Second, HRS § 92–7 does not require that the hearing be held within a certain distance of the license applicant's proposed site. Finally, as to the change from 40%, the Director gave notice, as indicated previously, and the majority protest vote requirement is set forth in HRS § 281–59. *See supra* note 1.

Appellant raised similar arguments in the court. Finding no. 18 of the court states that "[t]here were no facts presented to the [c]ourt that conclusively identified an error in procedure on the part of [Appellee]." In addition, in conclusion no. 10, the court states, "[Appellee] and this [c]ourt gave due regard and consideration for the procedural, notice and hearing issues raised by opponents to the proposed license." On appeal Appellant does not contest finding no. 18 or conclusion no. 10.

45. Appellee attaches a different version of the "Guidelines" in its Answering Brief, entitled, "Guidelines For Filing Protests Applicable to Applications Requiring Notice to Property Owners Statutory Reference: § 281–57–59, Hawai'i Re-

vised Statutes" (Guidelines II). This copy differs from the version sent to the owners of record within 100/500 feet of the premises, including Appellant, as part of the initial notice transmitted by Ms. Yoneyama on May 16, 2003. Guidelines II specifically states, *"Each owner of record, including co-owners/co-lessees of record, or owners of record of shares in a cooperative apartment within 500 feet of the premises must file a protest individually."* (Emphasis in original.) In addition, Guidelines II states in Section 3(a) that "[e]ach property counts only once. Properties with multiple owners/co-owners/lessees/co-lessees must ensure that a majority of the owners/co-owners/lessees/co-lessees file protests in order that the parcel be counted as a protest."

46. While Appellant raised this argument with the court, the court stated in finding no. 20, that "[t]here was no evidence presented to the [c]ourt that establishes the denial of property rights or procedural due process." Likewise, the court stated in conclusion no. 10, that "[Appellee] and this [c]ourt gave due regard and consideration for the procedural, notice and hearing issues raised by opponents to the proposed license." Neither finding no. 20 nor conclusion no. 10 are challenged on appeal and are, therefore, binding. *See Bremer, supra, and Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) (stating that "[i]f a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct

Appellant has not shown a deprivation of property without due process.

This court has said that, "[t]he basic elements of procedural due process of law require *notice and an opportunity* to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant property interest." *Sandy Beach Def. Fund v. City Council,* 70 Haw. 361, 378, 773 P.2d 250, 261 (1989) (citations omitted) (emphasis added). As in *Sandy Beach,* in this case, Appellee provided Appellant with "notice" and the "opportunity to be heard." *Id.*

Appellant was provided the opportunity to participate at multiple points in the licensing process. General notices of the meetings were published in local newspapers for the July 3, 2003, the August 2, 2003, and the October 2, 2003 meetings. As noted, *supra,* the Director notified Appellant of the October 2, 2003 meeting by letter and provided him a copy of the AG's September 9, 2003 letter. Additionally, by letter dated October 22, 2003, the Director notified Appellant that his petition for rehearing would be placed on the agenda for Appellee's November 6, 2003 meeting.

Appellant was given the opportunity to be heard at the public hearings. During the process, Appellant and other residents of the

Kona Plaza Condominium were permitted to present written and oral testimony. Furthermore, Appellant's motion for rehearing was considered by Appellee on November 6, 2003.

Appellant contends that there has been a deprivation of a significant property interest; however, the record does not support this contention. As mentioned above, Appellant's contention rests on an estimate provided by a person with no particular experience in real estate valuation. In addition, the court also found, and Appellant does not contest on appeal, that there were no facts presented to support Appellant's due process claim. In this regard, Appellant did not challenge either finding no. 20 or conclusion no. 10. *See supra* note 46.

## X.

For the foregoing reasons, the court's September 10, 2004 final judgment affirming Appellee's October 2, 2003 oral decision granting a liquor license to Applicant is affirmed.

statement of law is valid" (quoting *Wisdom v. Pflueger,* 4 Haw.App. 455, 459, 667 P.2d 844, 848 (1983))).