980 P.2d 1005

**MI SUK LING, Petitioner–Appellant,**

v.

**HAA CHUN YOKOYAMA, also known as Hwa' Chun Yokoyama, Respondent–Appellee.**

No. 21891.

Intermediate Court of Appeals of Hawai'i.

June 28, 1999.

Herman H.M. Ling, on the briefs, for petitioner-appellant.

Mark S. Kawata, on the briefs, for respondent-appellee.

WATANABE, ACOBA, and LIM, JJ.

Opinion of the Court by ACOBA, J.

We hold that Hawai'i Revised Statutes (HRS) § 604–10.5 (1993 and Supp.1998) requires that the hearing on the merits of a petition to enjoin harassment must be held within fifteen days of the filing of the petition. Therefore, we conclude the district court of the second circuit (the court) erred in granting a request to continue the hearing on the harassment petition brought by Petitioner–Appellant Mi Suk Ling (Petitioner) against Respondent–Appellee Haa Chun Yokoyama (Respondent) to a date beyond the fifteen-day period. However, we hold, further, that no prejudice redounded to Petitioner because, *inter alia*, the court extended a temporary restraining order prohibiting Respondent from harassing Petitioner for the period of the continuance.

## I.

On July 6, 1998, Petitioner filed a "Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment" (petition) with the court against Respondent pursuant to HRS § 604–10.5. Based on this petition, the court found that a temporary restraining order (TRO) "should be granted and [was] necessary to prevent acts of harassment." It therefore issued, ex parte, a TRO against Respondent prohibiting Respondent from engaging in certain acts [1] "[p]ending the hearing on the Order to Show Cause." The TRO was effective upon its signing and filing and "remain[ed] in effect for fifteen days." Under the order, Respondent was directed to appear "[a]t the hearing on the Order to Show Cause [on Monday, July 13, 1998 at 9:30 a.m.] ... to give any reason(s) why [the o]rders should not continue to be effective."

On July 9, 1998, Respondent filed a petition in kind against Petitioner. In response to Respondent's petition, the court issued a TRO against Petitioner for fifteen days, ordering that Petitioner be enjoined and restrained from specific acts of harassment against Respondent. Petitioner was ordered to appear for a hearing on this petition, also at 9:30 a.m. on July 13.

At the July 13 hearing, Respondent's attorney requested a continuance because he had not had a full opportunity to investigate the case and needed time to prepare a response to Petitioner's petition. Petitioner objected to the continuance on the grounds that a hearing on her petition was required to be held within fifteen days of its filing, her witnesses were present for trial, and she had incurred expenses to be present at the July 13 hearing.

The court granted Respondent's request for a continuance and continued the matter to July 27, 1998. In response to Petitioner's objections, the court ordered Respondent to pay the witness fees incurred by Petitioner and extended Petitioner's TRO against Respondent to July 27, 1998.

A hearing on the merits of the petition was convened on July 27, 1998 and on July 29, 1998. The court thereafter entered an August 10, 1998 written order dismissing Petitioner's petition because it "did not find enough basis" to issue a restraining order.

On appeal, Petitioner's sole contention is that the court erred in continuing the hearing on her petition beyond the fifteen-day time period prescribed by HRS § 604–10.5(f) (Supp.1998).

## II.

### A.

■ Ordinarily, "the granting or denial of a continuance is a matter that is addressed to the sound discretion of the trial court and is not subject to reversal on appeal absent a showing of abuse." *Sanders v. Point After, Inc.,* 2 Haw.App. 65, 70, 626 P.2d 193, 197 (1981) (citing *Yamashiro v. Costa,* 26 Haw. 54 (1921); *Irwin v. Lyman,* 29 Haw. 434 (1926); *In re Adoption of Jane Doe,* 42 Haw.

---

1. The following acts were prohibited: "Contacting, threatening, or physically harassing ... [Petitioner–Appellant Mi Suk Ling (Petitioner)] and ... any person(s) residing at Petitioner['s] residence, [t]elephoning ... Petitioner[, and] [e]ntering or visiting ... Petitioner['s] residence, including yard and garage and ... place of employment." Respondent was further "prohibited from possessing or controlling a firearm or ammunition while th[e] temporary restraining order [was] in effect."

250 (1957)). Petitioner contends, however, that the word "shall" in HRS § 604–10.5(f) indicates that the fifteen-day time period prescribed is mandatory, and that the court erred in continuing the hearing on her petition beyond the fifteen-day period. HRS § 604–10.5 (Supp.1998) states, in relevant part:

(a) For the purpose of this section:

. . .

"Harassment" means:

(1) Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault; or

(2) An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual, and that serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.

(b) The district courts shall have power to enjoin or prohibit or temporarily restrain harassment.

. . . .

(f) *A hearing on the petition to enjoin harassment shall be held within fifteen days after it is filed.* The parties named in the petition *may* file responses explaining, excusing, justifying, or denying the alleged act or acts of harassment. *The court shall receive such evidence as is relevant at the hearing, and may make independent inquiry.*

If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time

to which the injunction applies exceeds a total of three years.[2]

(Emphases added.)

The term "shall" is not defined in the statute. Where a term is not statutorily defined, our objective is to construe the term according to the legislature's intent, and we may rely upon "extrinsic aids" to determine such intent. *State v. Mundell,* 8 Haw.App. 610, 616, 822 P.2d 23, 27, *reconsideration denied,* 8 Haw.App. 661, 868 P.2d 466, *cert. denied,* 72 Haw. 619, 841 P.2d 1075 (1991). *Accord Estate of Doe v. Paul Revere Ins. Group,* 86 Hawai'i 262, 270, 948 P.2d 1103, 1111 (1997). Legal and lay dictionaries are extrinsic aids which may be helpful in discerning the meaning of statutory terms. *State v. Chen,* 77 Hawai'i 329, 337, 884 P.2d 392, 400 (App.), *cert. denied,* 77 Hawai'i 489, 889 P.2d 66 (1994).

According to *Black's Law Dictionary* 1233 (5th ed.1979), "shall," "[a]s used in statutes, contracts, or the like, . . . is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation[.]" We note, further, that in HRS § 604–10.5(f), the word "shall" in the subject phrase immediately precedes the word "may" in the sentence which follows. In such a context, the Hawai'i Supreme Court has advised that "[w]here both mandatory and directory verbs are used in the same statute, especially where 'shall' and 'may' are used in close juxtaposition, we infer that the legislature realized the difference in meaning and intended that the verbs used should carry with them their ordinary meanings." *In re Tax Appeal of Frank F. Fasi, Mayor, City and County of Honolulu,* 63 Haw. 624, 626–627, 634 P.2d 98, 101 (1981). Nothing in HRS § 604–10.5 indicates that "shall" should be given anything other than its ordinary meaning. Accordingly, we agree with Petitioner that the term "shall" mandates the

**2.** On appeal, Petitioner alleges a violation of the 1993 version of Hawai'i Revised Statutes (HRS) § 604–10.5(f). HRS § 604–10.5(f) was amended in 1996. 1996 Haw. Sess. L., Act 245, § 1, at 550. However, the amendment to HRS § 604–10.5(f) (Supp.1998) does not affect Petitioner's argument.

petition hearing be held within the fifteen-day time period.

Respondent's argument that HRS § 604–10.5(f) "merely requires that the [c]ourt *set* a hearing within [fifteen] days" of the petition's filing is not persuasive. (Emphasis added.) The statutory language plainly states that the hearing be held within the prescribed time. Thus, Respondent's assertion that the court satisfied the requirement by setting the date for the hearing, rather than by holding the hearing within fifteen days of the time of filing, is incorrect.

## B.

While we conclude the statute mandates a hearing on the petition be held within fifteen days, the scope of the term "held" is not defined in the statute. In such an instance, we may " 'read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.' " *Frank v. Hawaii Planing Mill Found.*, 88 Hawai'i 140, 144, 963 P.2d 349, 353 (1998) (quoting *Gray v. Administrative Dir. of the Court*, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997)).

HRS chapter 604 was enacted "to prevent harassment that cannot be effectively controlled by criminal processes and penalties" because there was "no civil statute that [could] be used to interrupt a course or pattern of intimidation that stops short of assault or threats." Sen. Stand. Comm. Rep. No. 493–86, in 1986 Senate Journal, at 1005. In apparent consonance with this purpose, HRS § 604–10.5(d) (1993) and (f) authorize the court to issue a temporary restraining order against named persons on allegations made by a petitioner under penalty of perjury.

The fifteen-day hearing requirement appears to coincide with the fifteen-day TRO period. HRS § 604–10.5(e) (1993) provides, in relevant part, that "[u]pon petition to a district court under this section, the court may temporarily restrain for a period of fifteen days, persons named in the petition from harassing the petitioner if the alleged

harassment has caused the petitioner substantial emotional distress." Thus, the TRO provision ensures that the petitioner will have the benefit of a court order prohibiting harassment pending the hearing on the petition. Also in our view, the hearing contemplated under HRS § 604–10.5(f) is one on the merits of the petition because HRS § 604–10.5(f) directs that "the court shall receive *such evidence as is relevant at the hearing.*" (Emphasis added.)

We consider, further, that the term "held" has been defined as "to engage in with someone else or with others, . . . convene, . . . to schedule and assemble or meet[.]" *Webster's Third New International Dictionary* 1078 (1981). Thus, viewed in its statutory context, the term "held" suggests that the parties must, at the least, convene or meet in a hearing on the merits within the allotted time.

■ At the July 13, 1998 hearing, the court stated that the fifteen-day hearing period was established to benefit respondents. In our view, neither the statutory language nor the legislative history support this construction. In light of the legislature's expressed desire to "prevent harassment," the expedited TRO procedure, and the fifteen-day period in which the petition was intended to be resolved, we conclude the statutory time period was intended to benefit petitioners.

Based on the foregoing, we believe it evident that the intent of the legislature was that the hearing on the merits of the petition be held, that is, at the least, convened within the fifteen-day period during which the TRO is in effect and operative.[3] A hearing on the merits of Petitioner's petition was not convened within the fifteen-day period although Petitioner was ready to proceed. The hearing on July 13, 1998 dealt only with continuing the hearing, and at the court's suggestion, with considering mediation of the dispute.

---

**3.** Conceivably the statute may be construed as requiring that the hearing be completed within the fifteen-day period. However, we believe the construction we give the term "held" is consis-

tent with its common definition and practicably recognizes the contingencies which may arise during litigation.

### III.

■ However, even if the court erred in granting the continuance, the error would have no bearing on the court's dismissal order. Petitioner's petition was dismissed because the court concluded there was no evidentiary basis on which to grant an injunction. On appeal, Petitioner does not raise any argument regarding this conclusion. Because she presents no discernible argument regarding the merits of the dismissal order, we do not address whether there was any error in this regard. *Loui v. Board of Medical Examiners,* 78 Hawai'i 21, 29 n. 19, 889 P.2d 705, 713 n. 19 (1995).

We also note that Petitioner did not designate the transcripts of the July 27 and July 29 proceedings as part of the record on appeal. " 'The burden is upon the appellant in an appeal to show error by reference to matters in the record, and he [or she] has the responsibility of providing an adequate transcript.' " *Bettencourt v. Bettencourt,* 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995) (quoting *Union Building Materials Corp. v. The Kakaako Corp.,* 5 Haw.App. 146, 151, 682 P.2d 82, 87 (1984)) (some citations omitted). In the absence of the transcript of proceedings, the record is insufficient to show any possible prejudice to Petitioner from the court's dismissal order.

We observe, further, that whatever prejudice might have been incurred by Petitioner as a result of the continuance was dissipated by the extension of the TRO to the completion of the hearing which began on July 27, 1998. The effect of the extension was to maintain the court's initial order against harassment until the case was decided. Although the continuance was in technical violation of the mandate in HRS § 604–10.5(f),[4] the protection intended to be afforded a peti-

tioner until a resolution of the petition remained intact.[5]

### IV.

Finally, Respondent contends that "[t]his appeal should be deemed frivolous and attorneys' fees and costs awarded to [Respondent]." Hawai'i Rules of Appellate Procedure (HRAP) Rule 38 states that "[i]f a Hawai'i appellate court shall determine that an appeal decided by it was frivolous, it may award damages including reasonable attorneys' fees and costs to the appellee."

This court has held that "[a] frivolous appeal is one 'manifestly and palpably without merit so as to indicate bad faith on appellant's part.' " *Schubert v. Saluni,* 9 Haw. App. 591, 598, 855 P.2d 858, 862 (1993) (quoting *Morrison–Knudsen Co. v. The Makahuena Corp.,* 66 Haw. 663, 672 n. 5, 675 P.2d 760, 767 n. 5 (1983)). HRAP Rule 38 sanctions have been imposed in past cases where "appellant has engaged in a pattern of frivolous and vexatious litigation," *Abastillas v. Kekona,* 87 Hawai'i 446, 449, 958 P.2d 1136, 1139 (1998), or where appellants continued to acknowledge controlling authority contrary to their assertions. *Gold v. Harrison,* 88 Hawai'i 94, 962 P.2d 353 (1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1254, 143 L.Ed.2d 351 (1999).

■ In the case at bar, Petitioner argued the issue of the mandatory fifteen-day time period at the first hearing on July 13. After the continuance was granted over Petitioner's objection, Petitioner filed a petition for a writ of mandamus, or alternatively, for writ of prohibition in the Hawai'i Supreme Court.[6] The supreme court dismissed this petition without prejudice, and stated that Petitioner would "have a remedy by way of appeal if [Petitioner] is dissatisfied with the order or judgment entered after the July 27, 1998 hearing."

---

4. There may be exceptional circumstances under which a court may be compelled to order a continuance, but as we point out *infra,* any conceivable prejudice would ordinarily be cured by extending the initial temporary restraining order.

5. The expedited procedures adopted by the legislature in HRS § 604–10.5(f) were obviously intended to effect a prompt disposition of the

harassment petition. Here the petition was decided eight days after the mandated period. We are confident that the trial courts will seek to adhere to the fifteen-day hearing requirement.

6. Petitioner's representations as to the writs are not disputed by Respondent.

We have determined Petitioner was correct as to the mandatory nature of the fifteen-day hearing requirement. Accordingly, we do not find Petitioner's appeal frivolous, and decline to impose sanctions under HRAP Rule 38 as requested by Respondent.

### V.

For the foregoing reasons, the court's dismissal order of August 10, 1998 is affirmed.