**Electronically Filed
Supreme Court
SCWC-21-0000027
07-MAR-2023
09:11 AM
Dkt. 18 OPA**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

KIEU MEYER, STEPHEN MEYER, KIEU MEYER ON BEHALF OF A MINOR,
Respondents/Petitioners-Appellees,

vs.

JAMES BASCO; MARY BASCO, Petitioners/Respondents-Appellants.
_____

SCWC-21-0000027

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000027; Case No. 2DSS-20-0000144)

MARCH 7, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This opinion addresses whether a district court has subject matter jurisdiction to rule on a Hawai'i Revised Statutes ("HRS") § 604-10.5 petition to enjoin harassment ("injunction petition") after ninety days elapses from issuance of an ex parte temporary restraining order ("TRO"). We hold the Intermediate Court of

Appeals ("ICA") correctly held the district court has such jurisdiction.

Due to public safety implications, however, we also address an issue the ICA did not: whether an HRS § 604-10.5 TRO expires after ninety days despite district court orders continuing the TRO beyond ninety days pending completion of a hearing and decision on the injunction petition.

For the reasons explained below, we hold that if a district court has commenced hearing the merits of an HRS § 604-10.5 injunction petition but, despite reasonable efforts, is unable to conclude the hearing within ninety days of issuance of the ex parte TRO, it has jurisdiction and discretion to continue the TRO pending its final decision on the injunction petition as long as standards for issuance of temporary injunctive relief are met.[1]

We therefore affirm the ICA's November 1, 2022 judgment on appeal, subject to the clarifications in this opinion.

## II. Background

### A. District court proceedings

#### 1. The petition

On June 1, 2020, Kieu Meyer, Stephen Meyer, and Kieu Meyer on behalf of a minor child (collectively "the Meyers"), filed a

---

[1]    Under the circumstances of this case, we need not address whether the Meyers' TRO was properly continued past ninety days.

2

petition against their neighbors James Basco, aka "Tony Basco," and Mary Basco (collectively "the Bascos") in the District Court of the Second Circuit ("district court"). The petition requested a ninety-day TRO to be followed by a three-year injunction against harassment pursuant to HRS § 604-10.5 (2016 & Supp. 2019).[2] The Meyers alleged disturbing incidents by the

---

[2] HRS § 604-10.5 (2016 & Supp. 2019) provided in relevant part:

§604-10.5 **Power to enjoin and temporarily restrain harassment.** (a) For the purposes of this section: "Course of conduct" means a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose.
"Harassment" means:
(1) Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault; or
(2) An intentional or knowing course of conduct directed at an individual that seriously alarms or disturbs consistently or continually bothers the individual and serves no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress.
(b) The district courts shall have the power to enjoin, prohibit, or temporarily restrain harassment.
(c) Any person who has been subjected to harassment may petition the district court of the district in which the petitioner resides for a temporary restraining order and an injunction from further harassment.
    . . . .
(f) Upon petition to a district court under this section, the court may temporarily restrain the person or persons named in the petition from harassing the petitioner upon a determination that there is probable cause to believe that a past act or acts of harassment have occurred or that a threat or threats of harassment may be imminent. The court may issue an ex parte temporary restraining order either in writing or orally; provided that oral orders shall be reduced to writing by the close of the next court day following oral issuance.
(g) A temporary restraining order that is granted under this section shall remain in effect at the discretion of the court for a period not to exceed ninety days from the date the order is granted. A hearing on the petition to enjoin harassment shall be held within fifteen days after the temporary restraining order is granted. If service of the temporary restraining order has not been effected before the date of the hearing on the petition to enjoin,

Bascos against them occurring from 2012 to 2020. The allegations included physical violence, cursing, racially discriminatory and physically threatening language, and refusal to leave the Meyers' premises.

On June 1, 2020, the district court[3] granted an ex parte TRO for fifteen days "unless extended or terminated by the Court."

The district court schedules harassment petition hearings during a three-hour block every Monday morning. The hearings for this case spanned six separate dates because of the district court's scheduling constraints and the case's contested nature.[4]

_____

the court may set a new date for the hearing; provided that the new date shall not exceed ninety days from the date the temporary restraining order was granted.

    The parties named in the petition may file or give oral responses explaining, excusing, justifying, or denying the alleged act or acts of harassment. The court shall receive all evidence that is relevant at the hearing and may make independent inquiry.

    If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.

    . . . .

(h) The court may grant the prevailing party in an action brought under this section costs and fees, including attorney's fees.

[3] The Honorable Blaine J. Kobayashi presided.

[4] When Kieu Meyer testified during the first hearing, the Bascos conducted voir dire of various pictures and exhibits. During the second hearing, the parties completed the examinations of Kieu Meyer and a second witness. Throughout the next three hearings, six more witnesses testified. At the December 7, 2020 hearing, the court proposed having the next hearing

4

Hearings were held on June 15, July 6, August 17, September 28, and December 7, 2020, and on January 11, 2021. Until the last hearing, the district court ordered that the TRO remain in effect until the next hearing.

## 2. Motion to dismiss for lack of jurisdiction

The Bascos did not object to the district court's orders continuing the TRO. On December 27, 2020, however, they filed a motion to dismiss the Meyers' injunction petition, alleging a lack of subject matter jurisdiction. The Bascos asserted that under HRS § 604-10.5(g), a TRO can remain in effect only for "a period not to exceed ninety days from the date the order is granted," and that, therefore, the TRO and the court's jurisdiction over the matter expired on August 29, 2020.

The district court scheduled a hearing on the Bascos' motion for January 11, 2021, the next scheduled hearing on the Meyers' injunction petition. Before the hearing, the Meyers filed a memorandum in opposition. They noted the Bascos had not objected to any of the orders continuing the TRO. They also argued HRS § 604-10.5 should be construed to ensure petitioners have the benefit of an order prohibiting harassment pending completion of the hearing.[5]

_____

in two weeks. The Meyers asked to continue it until January to "enjoy our holidays" and the Bascos agreed.

[5]     The Meyers also argued that Chief Justice Mark E. Recktenwald authorized each presiding judge to postpone matters to ensure health and

3.   **Orders granting injunction against harassment and awarding attorney fees and costs**

At the January 11, 2021 hearing, the district court denied the Bascos' motion to dismiss for lack of jurisdiction. The district court concluded it was not divested of jurisdiction just because more than ninety days had elapsed since the initial granting of the TRO. The court pointed out that, if that was the case, a respondent could drag out an injunction hearing for more than ninety days. The court also determined it had inherent authority to continue the TRO in place and protect petitioners pending a final decision. It opined that this comported with the purpose and intent of HRS § 604-10.5 to restrain acts of harassment until the injunction hearing was concluded.

The district court then found that the Meyers proved the allegations of the petition by clear and convincing evidence and granted a three-year injunction order. On February 8, 2021, the court approved the Meyers' HRS § 604-10.5(h) motion for attorney fees and costs in full, and ordered the Bascos to pay attorney fees of $21,252.00 and costs of $1,108.44.

_____

safety during the COVID-19 pandemic. This was not a basis for the ICA's ruling and is not raised on certiorari. Hence, arguments and rulings regarding COVID-19 orders will not be further discussed.

6

**B.  ICA proceedings**

The Bascos appealed, repeating arguments they made to the district court.  In summary, they argued that because the TRO was granted on June 1, 2020, it was only valid until August 29, 2020 pursuant to HRS § 604-10.5(g) and that the district court therefore lacked subject matter jurisdiction to enter the injunction and attorney fees orders.  They also cited to Ling v. Yokoyama, 91 Hawai'i 131, 980 P.2d 1005 (App. 1999), which is discussed below.

In a September 20, 2022 memorandum opinion, the ICA affirmed the district court.  Meyer v. Basco, CAAP-21-0000027 (App. Sept. 20, 2022) (mem. op.).  The ICA pointed out that the purpose of the TRO is to protect against imminent harm by providing a period of separation while the district court hears from the parties and decides whether to grant a petition to enjoin harassment.  Id. at 6 (citing Hamilton ex rel. Lethem v. Lethem, 126 Hawai'i 294, 305, 270 P.3d 1024, 1035 (2012)).  The ICA concluded the district court's jurisdiction over a petition to enjoin harassment does not hinge on the status of the TRO and that the district court therefore had jurisdiction over the injunction petition and motion for attorney fees and costs. Meyer, mem. op. at 7.

The ICA did not decide whether the TRO had actually expired on August 29, 2020, as alleged by the Bascos.

Meyer, mem. op. at 2 n.2. The ICA stated in footnote 2 that because the Bascos had not challenged the TRO extensions except to the extent it affected the district court's jurisdiction, it need not address whether the TRO expired after ninety days. Id.

On November 1, 2022, the ICA approved in full the Meyers' request for appellate attorney fees of $16,187.14. On November 1, 2022, the ICA filed its judgment on appeal.

## C. Certiorari proceedings

In essence, the Bascos' January 3, 2023 certiorari application argues the ICA erred by disregarding the plain and unambiguous language of HRS § 604-10.5(g) that a TRO "shall remain in effect at the discretion of the court for a period not to exceed ninety days from the date the order is granted[.]"

### III. Standards of Review

## A. Subject matter jurisdiction

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." Lingle v. Hawai'i Gov't Emps. Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawai'i 178, 182, 111 P.3d 587, 591 (2005).

## B. Statutory interpretation

"Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard." Lingle, 107 Hawai'i at 183, 111 P.3d at 592.

8

### IV. Discussion

**A. The ICA did not err by ruling the district court was not divested of jurisdiction to rule on the injunction petition just because more than ninety days had elapsed from the original TRO issuance**

The Bascos continue to assert the district court was without subject matter jurisdiction to address the injunction petition on the ninety-first day after the issuance of the TRO because of the language of HRS § 604-10.5(g), which says "[a] temporary restraining order that is granted under this section shall remain in effect at the discretion of the court for a period not to exceed ninety days from the date the order is granted[.]"

The ICA did not err by holding otherwise. The statute contains no language saying a district court must decide an injunction petition within ninety days of issuance of an ex parte TRO against harassment. And as the ICA noted, the statute also does not say a district court loses jurisdiction over an injunction petition when ninety-days elapses from ex parte TRO issuance. Further, HRS § 604-7(e) (2016) provides the district courts with "power to . . . make . . . orders . . . and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are . . . given them by law or for the promotion of justice in matters pending before them." The district courts have been empowered to rule on

9

injunction petitions under HRS § 604-10.5, and they must have reasonable discretion in the scheduling of hearings. It would be absurd to construe HRS § 604-10.5(g) as meaning a district court loses jurisdiction if the injunction petition is not decided within ninety days of the ex parte TRO issuance. As the district court reasoned, a respondent could then intentionally drag out an injunction hearing until ninety days had elapsed.

Moreover, as explained in Section IV.B below, district courts in any event have jurisdiction and discretion to continue TROs past ninety days.

For all of these reasons, the ICA did not err by holding that the district court was not divested of jurisdiction to rule on the injunction petition just because more than ninety days had elapsed from the original TRO issuance.

**B.    If a district court has commenced hearing the merits of an HRS § 604-10.5 injunction petition but, despite reasonable efforts, is unable to conclude the hearing within ninety days of issuance of the ex parte TRO, it has jurisdiction and discretion to continue the TRO pending its final decision on the injunction petition as long as standards for issuance of temporary injunctive relief are met**

In this case, an ex parte TRO was issued on June 1, 2020. Ninety days elapsed on August 29, 2020. Because of the hotly contested nature of the petition and the district court's scheduling constraints, hearings on the injunction petition took place on six separate dates over a seven-month period. Three of those hearings were after August 29, 2020. Each time the

10

hearings were continued, the district court ordered that the TRO remain in place.

The ICA explicitly indicated it was not deciding whether the TRO had expired after ninety days because it was not required to do so.  In other words, whether or not the TRO had expired, the district court still had jurisdiction to decide the injunction petition.  The Bascos' jurisdiction argument is, however, premised on an assumption that an HRS § 604-10.5(g) TRO can never continue past ninety days.  Therefore, if the assumption fails, the Bascos' entire argument fails.

In addition, although the issue of whether this TRO remained valid beyond ninety-days is moot, the question of whether an HRS § 604-10.5 TRO can be extended past ninety days has significant public safety and public interest implications. If the question remains unanswered, respondents might believe they can resume contact and engage in actions that could constitute harassment.  Also, uncertainty regarding the issue affects not only the parties, but also the actions of the judiciary and law enforcement.[6]  Therefore, we address the

---

[6]     Without a definitive answer, district court judges could rule differently on the issue.  Law enforcement would not know whether contact after ninety days constitutes a criminal offense.

11

question of whether an HRS § 604-10.5 TRO can be extended past ninety days.[7]

Our interpretation of HRS § 604-10.5 is shaped by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> When there is ambiguity in a statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law.

State v. Wheeler, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (cleaned up).

Thus, the fundamental starting point is the language of HRS § 604-10.5(g) itself, which provides:

> (g) A temporary restraining order that is granted under this section shall remain in effect at the discretion of the court for a period not to exceed ninety days from the date the order is granted. . . . A hearing on the petition to enjoin harassment shall be held within fifteen days after the temporary restraining order is granted. If service of the temporary restraining order has not been

---

[7] The public interest exception to the mootness doctrine applies when the question involved affects the public interest, and it is likely that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made. Cmty. Ass'ns of Hualalai, Inc. v. Leeward Plan. Comm'n, 150 Hawai'i 241, 253 n.18, 500 P.3d 426, 438 n.18 (2021).

> effected before the date of the hearing on the petition to enjoin, the court may set a new date for the hearing; provided that the new date shall not exceed ninety days from the date the temporary restraining order was granted.
> . . . .
> If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner . . .; <u>provided that this subsection shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years</u>.

(Emphases added.)

The Bascos argue that because of the first sentence of HRS § 604-10.5(g), underlined above, the TRO could not continue past ninety days (and that the district court was therefore also divested of jurisdiction to rule on the injunction petition). The plain language of HRS § 604-10.5(g) indicates otherwise.

First, the "temporary restraining order that is granted under this section" refers to the <u>ex parte</u>[8] TRO issued pursuant to HRS § 604-10.5(f).[9] A temporary restraining order is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction. <u>Wahba, LLC v. USRP (Don), LLC</u>, 106 Hawai'i 466, 472, 106 P.3d 1109, 1115 (2005). "Preliminary injunction" refers to an interlocutory injunction issued after notice and a hearing,

_____

[8] <u>Black's Law Dictionary</u> (11th ed. 2019) defines "ex parte" as "[d]one or made at the instance and for the benefit of one part only, and without notice to, or argument by, anyone having an adverse interest."

[9] See <u>supra</u> note 2 for the text of HRS § 604-10.5(f).

13

which restrains a party pending trial on the merits. County of Johnston v. City of Wilson, 136 N.C. App. 775, 780 (2000).

Thus, once a hearing on the merits of an injunction petition has begun, a continued TRO is no longer one that has been issued ex parte, and is not equivalent to the "temporary restraining ordered that [has been] granted" under HRS § 604-10.5(f). Rather, when a district court begins hearing the merits of an injunction petition but continues a TRO, it is actually issuing temporary injunctive relief in the nature of a preliminary injunction. See Office of Hawaiian Affairs v. Housing and Comm. Dev. Corp. of Hawai'i, 117 Hawai'i 174, 211, 177 P.3d 884, 921 (2008) (rev'd & remanded on other grounds by Hawai'i v. Office of Hawaiian Affairs, 556 U.S. 163 (2009))("OHA v. HCDCH").

HRS § 604-10.5(g) then expressly provides that despite its language limiting a permanent injunction to a maximum of three years, district courts are not prohibited "from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years."[10]

Hence, the plain language of HRS § 604-10.5 permits district courts to enter ex parte TROs pursuant to subsection

---

[10] This language has existed in HRS § 604-10.5 since its passage in 1986. The legislative history does not indicate what the legislature meant by this language, but its plain language permits a district court to issue injunctive relief exceeding three years.

14

(f), but subsection (g) then provides district courts with discretion to issue additional injunctions exceeding the three-year maximum allowed for permanent injunctions.

This plain language interpretation is supported by the 1999 amendment to HRS § 604-10.5 as well as an ICA opinion.

In 1999, HRS § 604-10.5 was amended to allow TROs to extend to ninety days from the original language limiting duration to fifteen days.  The Senate Judiciary Committee in Standing Committee Report 1492 on HB 177 then stated in relevant part:

> The purpose of this bill, as received by your Committee, is to:
> . . . .
> (2) Extend the maximum duration for a temporary restraining order to ninety-days;
> . . . .
> Your Committee finds that these proposed changes to section 604-10.5, Hawai'i Revised Statutes, are designed to conform temporary restraining orders in District Court harassment cases with Family Court harassment injunction procedures and standards.
>
> Your Committee recognizes that the fifteen day duration of a temporary restraining order may be inadequate when serving a respondent who does not wish to be found, and that the petitioner must return to court to obtain a continuance every time the temporary restraining order expires.  However, your Committee is concerned that an ex parte allegation of harassment should not remain outstanding for a lengthy period without affording the respondent an opportunity to be heard.  Therefore, it is your Committee's intent that the District Court schedule hearing dates that would enable the respondent to be heard within fifteen days of the date of service of the temporary restraining order.

(Emphasis added.)

This shows the 1999 amendment was intended to not allow an ex parte TRO to continue past fifteen days of service without a hearing.  Thus, the legislature recognized the difference

between ex parte TROs and "injunctions" other than the three-year injunction.

The plain language interpretation and the intent of the legislature's 1999 amendment is supported by the ICA opinion in Ling, 91 Hawai'i 131, 980 P.2d 1005.[11]  In Ling, the district court granted respondent's request to continue the injunction petition hearing without addressing its merits, but also continued the TRO until the next hearing date.  91 Hawai'i at 132, 980 P.2d at 1006.  After hearing the merits, the district court dismissed the petition finding insufficient basis for issuance of an injunction.  Id.

The ICA held the term "shall" in the second sentence of HRS § 604-10.5(g) mandates that a hearing on the injunction petition be held within fifteen days of the ex parte TRO.[12]  91 Hawai'i at

_____

[11]     The ICA filed its opinion on June 28, 1999.  Under the version of HRS § 604-10.5 it addressed, a TRO was only valid for fifteen days.  HRS § 604-10.5(e) (1993).  However, an amendment allowing the initial TRO to extend to ninety days took effect on July 1, 1999.  1999 Haw. Sess. Laws Act 143, § 1 at 460-61; S. Stand. Comm. Rep. No. 1492, in 1999 Senate Journal, at 1599-1600; H. Stand. Comm. Rep. No. 733, in 1999 House Journal, at 1306-07; Conf. Comm. Rep. No. 86, in 1999 House Journal, at 948, Senate Journal, at 878.

[12]     At the time of the case, HRS § 604-10.5(f) (Supp. 1998) read:

> (f) A hearing on the petition to enjoin harassment shall be held within fifteen days after it is filed.  The parties named in the petition may file responses explaining, excusing, justifying, or denying the alleged act or acts of harassment.  The court shall receive such evidence as is relevant at the hearing, and may make independent inquiry.
>
> If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further

133-34, 980 P.2d at 1007-08. The ICA determined that the term "held" required the parties "at the least, convene or meet in a hearing on the merits within the allotted time." 91 Hawai'i at 134, 980 P.2d at 1008. The ICA held the district court erred in granting the continuance beyond fifteen days only because no hearing on the merits of the petition was held within fifteen days; the initial hearing dealt with only continuing the hearing, not the merits of the parties' arguments. Id.

The ICA also noted, however, that "[t]here may be exceptional circumstances under which a court may be compelled to order a continuance, but as we point out *infra*, any conceivable prejudice would ordinarily be cured by extending the initial temporary restraining order." 91 Hawai'i at 135 n.4, 980 P.2d at 1009 n.4. The ICA ultimately held the district court's error had no bearing on the court's dismissal of the petition:

> [W]hatever prejudice might have been incurred by Petitioner as a result of the continuance was dissipated by the extension of the TRO to the completion of the hearing[.] The effect of the extension was to maintain the court's initial order against harassment until the case was decided. Although the continuance was in technical violation of the mandate in HRS § 604-10.5(f), the protection intended to be afforded a petition until a resolution of the petition remained intact.

---

harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.

17

91 Hawai'i at 135, 980 P.2d at 1009.

Thus, in Ling, the ICA held that a hearing on the merits of an injunction petition must commence within fifteen days of service of the ex parte TRO on the respondent,[13] but that when hearings on the merits begin, a TRO can be extended beyond the statutory maximum for an ex parte TRO. 91 Hawai'i at 134-35, 980 P.2d at 1008-09. Once the merit hearing begins, the TRO is actually no longer ex parte.

Synthesizing the above, we hold that if a district court has commenced hearing the merits of an HRS § 604-10.5 injunction petition but, despite reasonable efforts, it is unable to conclude the hearing within ninety days of issuance of the ex parte TRO, it has jurisdiction and discretion to continue the TRO pending its final decision on the injunction petition, if standards for issuance of temporary injunctive relief are met. In other words, the continued TRO is no longer ex parte.

With respect to the standards for temporary injunctive relief, we have held:

> The test for granting or denying temporary injunctive relief is three-fold: (1) whether the plaintiff is likely to prevail on the merits; (2) whether the balance of irreparable damage favors the issuance of a temporary injunction; and (3) whether the public interest supports granting an injunction. However, . . . the more the

---

[13] HRS § 604-10.5(g) requires that a hearing on the merits of an injunction petition be "held" within 15 days of the issuance of the ex parte TRO. In Ling, however, the ICA recognized the validity of the TRO extension despite the lack of a merits hearing within 15 days. 91 Hawai'i at 135, 980 P.2d at 1009. District courts should, however, begin hearing the merits of an injunction petition within 15 days of service of the ex parte TRO.

> balance of irreparable damage favors issuance of the injunction, the less the party seeking the injunction has to show the likelihood of his success on the merits. . . .[T]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.

OHA v. HCDCH, 117 Hawai'i at 211-12, 177 P.3d at 921-22 (cleaned up). Hence, district courts should apply these standards in deciding whether to continue an HRS § 604-10.5 TRO past ninety days.

## C. Attorney fees and costs

Finally, on certiorari, the Bascos also challenge the district court and ICA awards of attorney fees and costs, but solely on jurisdictional grounds. No challenge is made as to the reasonableness of the awards. As the district court had jurisdiction and the ICA had appellate jurisdiction, we affirm those awards.

## V. Conclusion

For these reasons, we affirm the ICA's November 1, 2022 judgment on appeal, subject to the clarifications in this opinion.

Hayden Aluli                        /s/ Mark E. Recktenwald
for petitioners
                                    /s/ Paula A. Nakayama

Joy Yanagida                        /s/ Sabrina S. McKenna
for respondents
                                    /s/ Michael D. Wilson

                                    /s/ Todd W. Eddins



19